UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

THOMAS VON SCHULTZE,  )
ON BEHALF OF P.V.S.  )
    Plaintiffs,  )
 )
v.  )  C.A. No. _____
 )
HUDSON SCHOOL DISTRICT,  )
LAWRENCE W. RUSSELL, JR.,  )
AND SCOTT BAKER,  )
    Defendants.  )

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. This is a civil action for monetary relief from injuries the Plaintiff, P.V.S , (hereinafter "Plaintiff" or "P.V.S.) sustained as a result of the acts and omissions of the Hudson School District and their school officials relating to a sexual assault involving a male student on P.V.S., and the Hudson School District's deliberately indifferent actions afterwards in response in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX").

2. Plaintiffs assert two theories of liability for damages under Title IX: (1) discrimination on the basis of gender; and (2) deliberate indifference and a clearly unreasonable response after a sexual assault resulting in a hostile educational environment. Plaintiffs also assert two theories of liability under New Hampshire state law.

3. The Plaintiff was a fifth-grade elementary student playing at recess when she was sexually assaulted by a male classmate. The Plaintiff's elementary school, and its administrators, were immediately made aware of what had occurred to one of its young, female students under its watch. Despite this knowledge, the school, its administrators, and the school district failed to take any corrective action to address the sexual assault that one of its female students had experienced.

1

In essence, the school did nothing in response. As a result of this gross inaction, a hostile educational environment was created which caused the Plaintiff to subsequently move and change schools.

## PARTIES

4. The Plaintiff, P.V.S.[1], is a U.S. Citizen who resides in Milford, Hillsborough County, New Hampshire 03055. At all times relevant to this Complaint, P.V.S. was a student at Nottingham West Elementary School, which is part of the Hudson School District.

5. The Plaintiff, Thomas Von Schultze ("Mr. Von Schultze" or "Plaintiff"), is a U.S. Citizen who resides in Hudson, Hillsborough County, New Hampshire 03051. Mr. Von Schultze is the Plaintiff's father.

6. The Defendant, the Hudson School District SAU 81 ("Defendant" or "Hudson School District"), is a school district organized under New Hampshire law with a principal place of business located at 20 Library Street, Hudson, Hillsborough County, New Hampshire 03051.

7. The Defendant, Lawrence W. Russell, Jr. ("Defendant" or "Superintendent Russell"), is the superintendent of Hudson School District SAU 81 who has a business address at 20 Library Street, Hudson, Hillsborough County, New Hampshire 03051.

8. The Defendant, Scott Baker ("Defendant" or "Principal Baker"), is the principal of Nottingham West Elementary School who has a business address at 10 Pelham Road, Hudson, Hillsborough County, New Hampshire 03051.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs' statutory claims under Title IX present a federal question

---

[1] Due to the age of the Plaintiff, and the sensitive nature of the underlying allegations of this action, namely, the Plaintiff being a young victim of sexual assault, the precise identification of the parties is being intentionally omitted at this juncture.

2

over which this Court has jurisdiction. Plaintiffs also asserts state-law claims over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(a) because the Defendants conduct business within this judicial district.

11. This Court is the proper venue under 28 U.S.C. § 1391(b) because the Defendants are located in this judicial district and the actions, events, and/or omissions giving rise to the Plaintiffs' claims occurred in this judicial district.

## FACTS

1. At all relevant times to this action, P.V.S. was 11 years old and in the fifth (5th) grade at Nottingham West Elementary School ("Nottingham Elementary").

2. Nottingham Elementary is a public elementary school in the Hudson School District and, upon information and belief, is a recipient of federal funds within the meaning of Title IX.

3. P.V.S. is female.

4. On October 30, 2018, P.V.S. was sexually assaulted on the Nottingham Elementary playground during recess by another fifth (5th) grade classmate ("the perpetrator").

5. The perpetrator is male.

6. P.V.S. and the perpetrator were in the same fifth (5th) grade classroom at the time of the sexual assault.

7. While P.V.S. was waiting at the top of a slide located on the Nottingham Elementary School playground, the perpetrator grabbed P.V.S.'s vagina and buttocks area multiple times.

8. After the sexual assault occurred, the perpetrator stated to P.V.S. "this was fun and we're going to do this tomorrow."

9. P.V.S. was extremely and noticeably distressed after the sexual assault.

10. A recess monitor who was on duty when the sexual assault occurred was informed of what had happened to P.V.S. and subsequently reported the incident to school administrators.

11. On October 30, 2018, the Plaintiff's father, Thomas Von Schultze ("Mr. Von Schultze"), met with school administrators at Nottingham Elementary to discuss the sexual assault and the school's plan going forward. According to a meeting summary provided by the school, Mr. Von Schultze was reasonably concerned about the safety of P.V.S. in the school, upset about the entire situation, expressed his opinion that the perpetrator didn't belong around P.V.S., and stated that he was not satisfied with the school's plan in addressing the situation.

12. According to the meeting summary dated October 30, 2018, Nottingham Elementary officials employed a strategy of, among other things, "[an] assurance of seriousness and discipline" and a further action plan of, among other things, a "teaching piece to address behavior." As such, Nottingham Elementary administrators assured Mr. Von Schultze that it was taking the sexual assault of P.V.S. serious and would use the incident as a teaching moment.

### *Principal Scott Baker's November 2, 2018 Title IX Report*

13. On November 2, 2018, three days after the sexual assault occurred, Principal Baker, authored a Title IX Harassment Initial Report Form ("Principal Baker's Title IX Report").

14. In Principal Baker's Title IX Report, he stated that he interviewed both P.V.S. and the perpetrator following the October 30, 2018 sexual assault that had taken place on the Nottingham Elementary playground.

15. In his Title IX Report, Principal Baker noted that the perpetrator stated that he had only grabbed P.V.S.'s waist going down the slide.

16. During Principal Baker's interview of P.V.S., he noted in his Title IX Report that "They were playing a game and he started chasing her and then touched her 'private parts.' We

4

asked her if she thought he did this on purpose of if he could have done this unintentionally. PVS stated that it could have been done by accident, but she still felt uncomfortable about it."

17. Immediately following this paragraph in Principal Baker's Title IX Report he notes, "At this point, we looked at this as an accidental touching and there was no sexual intent on the part of [redacted]."

18. Principal Baker apparently came to the conclusion—after interviewing two fifth (5th) grade students on one occasion—that the sexual assault was completely innocuous and not sexual in nature despite the perpetrator grabbing P.V.S.'s vagina and making joking statements about the same to both P.V.S. and other classmates.

19. Principal Baker's Title IX Report subsequently notes that contacted the parents of both P.V.S. and the perpetrator to inform them of what had happened on October 30, 2018.

20. Principal Baker then goes on to state "When [the Plaintiff] got home, the story changed to where [redacted] purposefully touched her inappropriately and the father was extremely upset. He came in the next day and explained what [the Plaintiff] told him."

21. Principal Baker noted that the school proceeded to re-interview the perpetrator in addition to interviewing other students that were present during the October 30, 2018 sexual assault.

22. Principal Baker stated in his Title IX Report that the perpetrator could not remember too much of the incident and that other students didn't see the perpetrator sexually assault P.V.S.

23. Principal Baker concludes in his Title IX Report that they didn't "see" any sexual intent by the perpetrator and that the police ultimately came to the same conclusion as well.[2]

---

[2] The Hudson Police did not come to this conclusion, however. Rather the Hudson Police Department refused to prosecute this case due to the perpetrator's age and their potential inability to shows that his behavior was intentional, willful, or deliberate.

5

24. In an effort to "support" P.V.S., Principal Baker's Title IX Report states that the perpetrator was moved to a different classroom. Unfortunately, this classroom was right next to P.V.S.'s classroom and the children continued to share a hallway, lunchroom, and recess.

***Attorney Debra Weiss Ford's November 29, 2018 Review of Principal Baker's Title IX Report***

25. On November 13, 2018, Superintendent Russell contacted Attorney Debra Weiss Ford ("Attorney Ford") of the law firm of Jackson Lewis for the purpose of having Attorney Ford conduct a review of Nottingham Elementary Principal Baker's November 2, 2018 Title IX investigation. Attorney Ford e-mailed a summary of her findings to Superintendent Russell on November 29, 2018.

26. Attorney Ford stated that as a part of her review of Principal Baker's Title IX Report, she interviewed both P.V.S. and the perpetrator.

27. During Attorney Ford's interview of P.V.S.—and in contrast to the initial report authored by Principal Baker—the October 30, 2018 sexual assault was described with much more detail.

28. Attorney Ford noted in her email that P.V.S. stated that the perpetrator "grabbed her crotch and pushed it" and that "[the Plaintiff] said she thought that [redacted] did it on purpose." Furthermore, the email states "[the Plaintiff] said she told [redacted] to stop and she ran away from him."

29. In stark contrast to Principal Baker's Title IX Report—in which Principal Baker noted P.V.S. stated that the touching "could have been done by accident"—Attorney Ford's report clearly notes that P.V.S. thought the touching "was on purpose."

30. Furthermore, unlike Principal Baker's Title IX Report, Attorney Ford's report describes the touching of P.V.S.'s genital area in much more detail—specifically, that P.V.S. stated that the perpetrator "grabbed her crotch and pushed it."

6

31. Principal Baker's Title IX Report went into little to no detail about the specific nature of the touching.

32. Attorney Ford's report notes that P.V.S. "told [redacted] to stop and she ran away from him." Principal Baker's Title IX Report is devoid of any information relating to P.V.S. telling the perpetrator to stop his behavior and her subsequent flight to avoid further touching.

33. Attorney Ford also noted in her November 29, 2018 report that she interviewed the perpetrator who admitted that he inappropriately touched P.V.S. but denied touching her vagina.

34. Unlike Principal Baker's Title IX Report, Attorney Ford's report states that the perpetrator admitted to touching P.V.S.'s "bum."

35. Attorney Ford's report also notes—in a conclusory fashion without any basis in fact—that the perpetrator had never touched any other student inappropriately. It is unknown how Attorney Ford came to this conclusion and what, if any, other students or staff she interviewed.

36. Despite the numerous inconsistencies between Principal Baker's Title IX Report and Attorney Ford's November 29, 2018 report, Attorney Ford concludes that "I cannot conclude that [redacted] actions were intentional. [Redacted] he [redacted] was able to provide me with details which were consistent with his original interview on October 30, 2018."

### *Nottingham Elementary School Acts with Deliberate Indifference in Response to the Sexual Assault on the Plaintiff*

37. Nottingham Elementary administrators affirmatively chose not to discipline, suspend, or expel the perpetrator.

38. Rather, Nottingham Elementary administrators simply removed the perpetrator from P.V.S.'s classroom and provided wholly inadequate counseling services through the guidance counseling department.

39. The perpetrator was permitted by the Nottingham Elementary administrators to continue to attend school with P.V.S. regardless of the October 30, 2018 sexual assault.

7

40. P.V.S.—on a daily basis—would encounter the perpetrator in the hallways and common areas of the school and these daily encounters and interactions with the perpetrator would cause P.V.S. severe distress and anxiety.

41. P.V.S. became distressed at the mere prospect of encountering the perpetrator in the hallways of Nottingham Elementary while she walked between class, had lunch in the cafeteria, and played during recess.

42. P.V.S.'s mind was constantly focused on whether, when, and how she would encounter the perpetrator while at school—as opposed to being able to focus on her schoolwork and other normal activities that a fifth-grader is typically occupied with and engaged in.

43. The perpetrator continued to interact with P.V.S. in the weeks and months following the October 30, 2018 sexual assault, despite the perpetrator being removed from P.V.S.'s class.

44. The perpetrator would, among other things, inappropriately stare at P.V.S. for long periods of time, excessively wave at P.V.S. in an attempt to get her attention, and told other classmates that P.V.S.'s vagina was "squishy." This made P.V.S. extremely uncomfortable and caused her great distress while in and out of school.

45. On January 17, 2019, Nottingham Elementary counselor Meg Williams met with P.V.S. to discuss the sexual assault and how P.V.S. was doing at school. Interestingly enough, however, it was P.V.S. who, on her own accord, sought out the guidance of Meg Williams while she was meeting with a different student in P.V.S.'s class. Specifically, Meg Williams stated in a memorandum dated January 17, 2019: "While in Mr. Crivac's class to talk about another student, [the Plaintiff] asked to speak with me privately."

46. The substance of Meg Williams's discussion with P.V.S. was summarized in a memorandum dated January 17, 2019. Most striking, P.V.S. stated the following to her school

8

counselor: "[the Plaintiff] shared nothing at school had changed (still sees [redacted] in the cafeteria); "Feels like no one has done anything to change that"; and "She would like to meet with Mr. Baker and her father – still would like to eliminate seeing [redacted] at all." Additionally, Meg Williams noted in the memorandum dated January 17, 2019, that P.V.S. was "confused about was is going on."

47. The contemporaneous notes of P.V.S.'s school counselor demonstrate that P.V.S., despite being a young fifth (5th) grade student, appeared to be the only person at Nottingham Elementary concerned about the sexually and emotionally hostile environment that was created as a result of a heinous sexual assault.

48. As evidenced by the Nottingham Elementary school counselor's discussion with P.V.S.—which occurred nearly three months after the sexual assault—P.V.S. felt as though nothing had changed at the school in regards to addressing the perpetrator, that no one had done anything to help facilitate any changes to make her feel comfortable and safe, and that she wished to meet with the principal of the school in order to discuss ways to completely eliminate any encounters with the perpetrator.

49. In further demonstration of the school's insensitive response, the Nottingham Elementary school counselor, Meg Williams, stated to P.V.S.: "you're not in the first or second grade anymore. You're in fifth grade and you're grown up. It's time to get over it." This indefensible, victim-blaming response, by a school counselor nonetheless, was but one of a handful of reasons P.V.S subsequently enrolled in private counseling and Mr. Von Schultze had P.V.S. move out of this school district.

50. P.V.S., a fifth-grade elementary school student, understandably felt that the adults and professionals at her school had failed to help her in any meaningful way in the wake of a sexual assault.

51. Feeling unsatisfied and violated by the Defendants' deliberate indifference to the sexual assault, Mr. Von Schultze and P.V.S., pursued their own course of action by filing a stalking petition in the 9th Circuit Court – Nashua District Division.[3] On February 12, 2019, the 9th Circuit Court (Derby, J.) granted P.V.S.'s stalking petition against the perpetrator and ordered the following:

> (1) The Hudson School District shall be made a party to this case.
>
> (2) The parties agree that [the perpetrator] shall stay 25 yards away from [the Plaintiff] at all times. The Hudson School District shall explore and implement an action plan to ensure that the children have no incidental contact with each other while at school.
>
> (3) If there is incident contact between the children (i.e., [the perpetrator] and his para accidentally come within 25 yards of [the Plaintiff] while at activities or in the hallways), then [the perpetrator] shall not be in contempt. Direct physical or verbal or non-verbal contact, however, may acted on and result in further orders.
>
> (4) [The Plaintiff] agrees to dismiss her stalking petition and this case shall solely be a civil matter. Any violation of this order shall not be made criminal.

52. Interestingly enough, it took the above-mentioned February 12, 2019 Court Order—and not the Defendant's own initiative to fulfill its duty to keep one of its young students safe in the wake of a sexual assault—and for the Defendant to actually formulate an "action plan."

53. Apparently unhappy with a Court Ordering the Defendant to implement an action plan to properly deal with the situation, the Defendant, on February 21, 2019, filed a Motion for Reconsideration in regards to the February 12, 2019. On March 7, 2019, the 9th Circuit Court amended its February 12, 2019 Order to remove the Defendant as a party and its Order that the Defendant implement an action plan for the Plaintiff and perpetrator to have no incidental contact while at school.

---

[3] This state-based action was stylized as *[the Plaintiff] v. [the perpetrator]*, Case no. 459-2018-CV-0002 in the 9th Circuit Court - Nashua District Division.

10

54. As such, through its Motion for Reconsideration, the Defendant successfully motioned the Court to release it of any mandate to prevent P.V.S. and perpetrator from coming into contact with each other. In this regard, the Defendant clearly didn't want to be compelled by a court of law to keep its students safe.

55. However, regardless of the amendment of the February 12, 2019 Order—in which the Defendant successfully motioned the Court to abrogate its responsibility to implement an action plan to protect its student based on a highly technical basis—the Defendant stated at the time that it "continues to implement the plan."

56. The Defendant was unsuccessful in implementing or maintaining any action plan that protected P.V.S.

57. The Defendant had a duty to keep Nottingham Elementary reasonably safe for its students, including the Plaintiff, and to protect their students. The Defendant failed to do either of those things.

58. The response from the Hudson School District—which was demonstrably inadequate, harmful, and offensive—caused P.V.S. to suffer anguish, anxiety, fear, and distress in an environment which was, in theory, designed to be nurturing, supportive, and most importantly, safe.

59. The mission statement of Nottingham Elementary states in relevant part: "Our goal is to create a safe environment conducive to learning; one that challenges students to reach their potential, promotes self-worth, values diversity and encourages involvement." Nottingham Elementary and its staff failed to follow its own mission statement by subjecting one of its young, female students to an environment that embodied fear and hostility in the wake of a sexual assault.

60. The Nottingham Elementary 2019-2020 parent and student handbook states in relevant part: "It is the policy of the Hudson School District that all students and employees should

11

be able to work and study in an environment that is free of sexual harassment." Again, Nottingham Elementary and its staff failed to adhere to its own policy by subjecting one of its young, female students to an environment that embodied fear and hostility in the wake of a sexual assault.

61. P.V.S. has since moved out of the Hudson School District and is now attending a different school due to (a) the October 30, 2018 sexual assault; (b) the Defendant's lackluster, insensitive, and callous response; (c) and the hostile environment that resulted because of the Defendant's deliberate indifference.

62. The Plaintiff and Mr. Von Schultze have relocated to Milford, New Hampshire and have incurred costs relative to the same.

## CLAIMS FOR RELIEF

### COUNT I:
**Discrimination on the Basis of Gender in Violation of 20 U.S.C. § 1681 (Title IX)**
**(Defendant SAU 81)**

63. The Plaintiff hereby re-alleges and incorporates all of the above paragraphs in this Complaint as though fully set forth herein.

64. Upon information and belief, the Defendant has received, and continues to receive, federal finance assistance for its education program.

65. The Defendant had actual knowledge of a sexual assault and discrimination toward the Plaintiff by the perpetrator.

66. The sexual assault suffered by the Plaintiff is, by nature, discriminatory on the basis of her female gender.

67. The Defendant acted with deliberate indifference to known acts of sexual assault on one of its female students.

68. The Defendant did not take any meaningful corrective action to address the serious nature of the sexual assault; rather, the Defendant subjected the Plaintiff to encounter her attacker on a daily basis.

69. The discrimination and harassment was so severe and objectively offense so as to bar the Plaintiff's access to educational opportunities and benefits.

## COUNT II:
### Hostile Educational Environment in Violation of 20 U.S.C. § 1681 (Title IX)
### (Defendant SAU 81)

70. The Plaintiff hereby re-alleges and incorporates all of the above paragraphs in this Complaint as though fully set forth herein.

71. Upon information and belief, Defendant has received, and continues to receive, federal financial assistance.

72. The Plaintiff was denied access to educational opportunities and benefits as a result of physical sexual harassment, assault, and sexual discrimination that were severe and objectively offensive.

73. The Defendant acted with deliberate indifference resulting in a hostile educational environment for Plaintiff which subsequently forced her to relocate to a different town and school and lose her educational opportunities at Nottingham Elementary.

74. The Defendant only sanctioned the perpetrator to the extent that it moved him to a different classroom—subjecting the Plaintiff to an extremely hostile environment where she was forced to encounter him on a daily basis throughout the school. The perpetrator was permitted to continue to attend Nottingham Elementary where he was able to encounter the Plaintiff-victim on a daily basis.

75. The Defendant has deliberately failed to address the sexually hostile environment ongoing on the Nottingham school campus that caused the Plaintiff to suffer loss of educational

opportunities and benefits, along with damages, including but not limited to trauma, emotional distress, fear and anxiety.

## COUNT III:
### Violation of N.H. R.S.A. Chapter 507-B
### (All Defendants)

76. The Plaintiff hereby re-alleges and incorporates all of the above paragraphs in this Complaint as though fully set forth herein.

77. At all relevant times to this action, the Defendant maintained and conducted the operations of the Nottingham Elementary premises.

78. At all relevant times to this action, the Defendant owed a duty of care to its students, including the Plaintiff, Jane Doe.

79. The Defendant, in negligently maintaining and conducting its operations on the Nottingham Elementary premises, failed to meet its duty of care owed to the Plaintiff when it failed to protect the Plaintiff from a student-on-student sexual assault and through its failure to create a safe educational environment in the wake of the sexual assault.

80. The Plaintiff suffered an injury in the form of sexual assault while a student on the premises maintained and operated by the Defendant.

81. As a result of the Defendant's negligently maintenance and operation of its premises, the Plaintiffs have suffered damages.

## COUNT IV:
### Negligent Infliction of Emotional Distress
### (All Defendants)

82. The Plaintiff hereby re-alleges and incorporates all of the above paragraphs in this Complaint as though fully set forth herein.

83. The Defendants engaged in extreme and outrageous conduct that negligently caused severe emotional distress to the Plaintiff when they failed to appropriately investigate,

report on, manage, and take remedial action toward the sexual assault of P.V.S., a minor child, while they were in their roles as school administrators

84. The Defendants actions and/or omissions were so outrageous in character and so extreme in degree, that they go beyond all possible bounds of decency, and must be regarded as atrocious and utterly intolerable in a civilized community.

85. The Defendants actions have caused the Plaintiff to suffer severe anxiety, depression, and physical manifestations from the stress stemming from said sexual assault and the aftermath of the same.

86. The Plaintiff has suffered substantial, immediate, and irreparable harm due to the Defendants actions. The amount of damages associated with said harm will to be determined at trial (which shall include, but not be limited to, specific performance, actual damages, exemplary damages, punitive damages, attorney's fees, interest, and costs).

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Mr. Von Schulzte on behalf of P.V.S., respectfully prays that this Court:

1. After trial, find for the Plaintiff on Counts I-IV of its Complaint;
2. After trial, award the Plaintiff any damages that it may be entitled to, including, but not limited to general damages, compensatory damages, punitive damages, declaratory relief, and attorney fees against the Defendant SAU 81 pursuant to Counts I-II of its Complaint;
3. After trial, award the Plaintiff any damages that it may be entitled to, including, but not limited to general damages, compensatory damages, punitive damages, declaratory relief, and attorney fees against all Defendants pursuant to Counts III-IV of its Complaint;
4. Provide any other relief of which this Court deems just and proper.

## JURY DEMAND

**THE PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES AND COUNTS SO TRIABLE.**

Dated: March 12, 2020

Respectfully submitted,
The Plaintiffs,
**THOMAS VON SCHULTZE AND P.V.S.**,
By their Attorneys,

_____
Edward A. Prisby, NHBA #16681
eprisby@massfirm.com
Matthew R. Passalacqua, NHBA #21203
mpassalacqua@massfirm.com
**KAJKO, WEISMAN & COLASANTI LLP**
98 Spit Brook Road, Suite 1105
Nashua, NH 03062
Tel.: (603) 883-9649

## VERIFICATION

I, Thomas Von Schultze, on behalf of P.V.S., do hereby declare on this 12th day of March 2020, under the penalties of perjury, that I have read the foregoing Verified Complaint and know the contents thereof, and that the same is true to my knowledge, except to those matters that are alleged on information and belief; as to those matters, I believe them to be true.

_____
Thomas Von Schultze

**STATE OF NEW HAMPSHIRE**                                     **HILLSBOROUGH, SS.**

Thomas Von Schultze of 170 Ponemah Hill Road, Milford, New Hampshire 03055 appeared before me on this 12th day of March 2020 and took oath that the foregoing statements in this Verified Complaint and Jury Demand are true.

_____
Notary Public: Matthew Passalacqua
My Commission Expires: April 17, 2024

Matthew R Passalacqua
Justice of the Peace
State of New Hampshire
My Commission Expires
April 17, 2024